UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHERRYSTONE COURT, INC.,

      Plaintiff,

v.                             Case No.:  2:21-cv-736-JLB-MRM

THE CINCINNATI INDEMNITY
COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion to Stay and Compel Appraisal, filed on February 1, 2022.  (Doc. 34).  Defendant filed a Response in Opposition to Plaintiff's Motion to Stay and Compel Appraisal on February 14, 2022.  (Doc. 35). Additionally, Plaintiff filed Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion to Stay and Compel Appraisal.  (Doc. 38).  The motion is ripe for consideration.

For the reasons below, the Undersigned recommends that Plaintiff's Motion to Stay and Compel Appraisal (Doc. 34) be **GRANTED**.

## I.    BACKGROUND

This matter arises from an insurance dispute between Plaintiff, a condominium association located at 1200 Cherrystone Court in Naples, Florida, and

Defendant, Plaintiff's commercial property insurer.  (*See* Docs. 34 at 1; 34-2 at 1).[1]

Defendant issued a commercial property insurance policy to Plaintiff bearing policy

number CAP 515 51 65 for the period from April 11, 2016 to April 11, 2019, (the

"Policy").  (*See* Doc. 34-2 at 1).

The relevant provisions of the Policy read:

> **Section D.  Loss Conditions**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> . . .
>
> **2.  Appraisal**
>
> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss".  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss".  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:
>
> > **a.** Pay its chosen appraiser; and
> >
> > **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

---

[1]  Pinpoint page citations for documents refer to CM/ECF pagination.

(Doc. 34-2 at 70 (emphasis omitted)).

On September 10, 2017, Hurricane Irma damaged a portion of Plaintiff's commercial property. (Docs. 34 at 1-2; 9 at 2 ¶ 6; *see also* Docs. 34-3 at 1-2; 34-4 at 17-19). Plaintiff submitted a claim to Defendant for the damage and Defendant "determined that there is no coverage available for the reported loss and/or damage." (Doc. 34-3 at 1). Accordingly, Plaintiff filed suit in the Circuit Court for Collier County, Florida. (*See* Doc. 1). On October 6, 2021, Plaintiff's suit was removed to this Court. (*See* Docs. 1; 3). Plaintiff filed the instant motion seeking to compel Defendant to engage in an appraisal of Plaintiff's covered property. (Doc. 34).

## II.   ARGUMENTS

In support of its motion to compel appraisal, Plaintiff asserts that: (1) its property sustained covered damage as a result of Hurricane Irma, (*see* Doc. 34 at 1-2); (2) the property was insured by the Policy when the damage occurred, (*see id.* at 2); (3) Defendant, through its consultants, determined that Plaintiff's property had sustained hurricane-related damage, (*see id.* at 2, 9-10); (4) a dispute arose as to the total amount of loss, (*see id.* at 2-3, 9-10); (5) it properly requested an appraisal under the Policy, (*see id.* at 3, 10); and (6) Defendant improperly refused to engage in an appraisal, (*see id.*). Accordingly, Plaintiff contends that "appraisal is the proper (and most efficient) method to determine the amount of the loss." (*Id.* at 10). Plaintiff also specifically asserts that "it will not agree to a line-item delineated appraisal

award." (*Id.* at 19). Finally, Plaintiff argues that the instant litigation should be stayed pending the completion of the appraisal. (*Id.* at 19-20).

In response, Defendant contends that appraisal is improper "because [Defendant] denied [Plaintiff's] claim in its entirety." (Doc. 35 at 2-3 (citing Doc. 34-3 at 7; *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002); *Sandpiper Greens Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 2:20-cv-00578-JLB-MRM, 2020 WL 7768947 (M.D. Fla. Dec. 30, 2020))). In support, Defendant asserts that: (1) its June 24, 2021 coverage letter unambiguously states that "[Defendant] respectfully disclaims coverage for this claim in its entirety," (*id.* at 5 (citing Doc. 34-3 at 7)); and (2) its consultants' reports, (Docs. 34-4; 34-5), should not be read as a concession of coverage, (Doc. 35 at 5 (citation omitted)). Additionally, Defendant contends that appraisal is improper as it has alleged that the Policy has been rendered void based on Plaintiff's fraudulent misrepresentations and concealment of material facts. (*See id.* at 6-7 (citations omitted)).

Defendant also argues that: (1) this case should not proceed on a "dual-track," (*id.* at 7); (2) engaging in appraisal before litigation of the coverage issues will waste time and resources, (*id.* at 7-8); (3) if appraisal is compelled, the case should not be stayed, (*id.* at 8-9); and (4) if appraisal is compelled, the appraisal panel should be required to render a line-item appraisal award, (*id.* at 9-10).

By way of reply, Plaintiff asserts that Defendant acknowledged that Plaintiff sustained a loss caused by a "covered cause" and any of Defendant's coverage

defenses, including allegations of prejudice and fraud, can be addressed after appraisal.  (*See* Doc. 38 (citations omitted)).

## III.   LEGAL STANDARD

In a diversity case, the substantive law of the forum state – in this case Florida – applies.  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014).  "In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions."  *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163-T-17MAP, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016).  Thus, "motions to compel appraisal should be granted whenever the parties have agreed to the provision."  *Id.* (citing *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994)).  Additionally, "enforcement of appraisal provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.'"  *Id.* (quoting *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011)).

Furthermore, "[u]nder Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question."  *Gonzalez v. Am. Sec. Ins. Co.*, No. 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted).  "However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal."  *Evanston Ins.*

*Co. v. Etcetera, Etc Inc.*, No. 2:18-cv-103-FtM-99MRM, 2018 WL 3526672, at *3
(M.D. Fla. July 23, 2018) (citations omitted).

## IV.   ANALYSIS

The Undersigned finds that appraisal should be compelled in this case.
Plaintiff states that it sustained a covered loss due to Hurricane Irma and a dispute
has arisen as to the total amount of that loss.  (Doc. 34 at 2-3).  Defendant "does not
dispute that the Policy['s appraisal provision applies] when only a valuation dispute
exists[, but argues that] this matter is not subject to appraisal because [Defendant]
denied [Plaintiff's] claim in its entirety."  (Doc. 35 at 2-3 (citing Doc. 34-3 at 7)).
Upon review of the parties' papers, the Undersigned finds that Defendant has
expressly acknowledged that Plaintiff's property sustained a covered loss, (*see* Doc. 9
at 2 ¶ 6), and therefore, despite the existence of coverage issues, the Court can
exercise its discretion to compel appraisal, *see Castillo at Tiburon Condo. Ass'n, Inc. v.
Empire Indem. Ins. Co.*, No. 2:20-cv-468-SPC-MRM, 2021 WL 4438370, at *6 (M.D.
Fla. Sept. 28, 2021).

### A.   Whether Defendant's Claim Denial Precludes Appraisal.

The parties' dispute whether Defendant's denial of coverage for the entire
claim precludes appraisal.  Plaintiff contends that Defendant acknowledged that
Plaintiff's property sustained a loss from a covered cause, a valuation dispute exists,
and, thus, appraisal is appropriate.  (Doc. 34 at 2-3).  Defendant responds that no
valuation dispute exists because "[Defendant] denied [Plaintiff's] claim in its

entirety," and, therefore, appraisal would be improper.  (Doc. 35 at 2-3 (citing Doc. 34-3 at 7)).

The Undersigned notes that Defendant's response to Plaintiff's motion circumvents the direct question of whether Plaintiff's property sustained damage from a covered cause, instead choosing to ambiguously assert that Defendant "disclaim[ed] coverage for [Plaintiff's] claim in its entirety."  (Doc. 34-3 at 7; *see* Doc. 35).  The Undersigned finds that this bare assertion alone cannot preclude Plaintiff from invoking the Policy's unilateral appraisal provision.

In making this finding, the Undersigned notes that an insurer can deny coverage for an entire claim on multiple distinct bases.[2]  At the same time, not all denials of coverage preclude appraisal because the Court has "discretion over the relative timing of appraisal and coverage determinations."  *Castillo*, 2021 WL 4438370, at *5-6 (citation omitted).  Thus, even though Defendant has denied coverage for Plaintiff's entire claim, the basis of that denial may not preclude

---

[2]  For example, an insurer may deny coverage for an entire claim by asserting:  (1) that all alleged losses were caused by an uncovered cause, such as wear and tear, *see Johnson*, 828 So. 2d at 1025 ("In both *Johnson* and *Gonzalez*, the insurers denied that there was a covered loss under the respective policies." (citations omitted)); (2) that an insured failed to comply with its post-loss obligations, *see Castillo*, 2021 WL 4438370, at *5 ("[S]ome Florida courts have constructively conditioned an insured's right to invoke appraisal on substantial compliance with the policy's post-loss duties." (citations omitted)); or (3) that the insured voided the policy by engaging in fraud, *see Villagio at Estero Condo. Ass'n, Inc. v. Am. Cap. Assurance Corp.*, No. 2D20-1414, 2021 WL 1432160, at *2 (Fla. 2d DCA Apr. 16, 2021) ("[The insurer] argued that because it had denied the claim as a whole based on fraud, compelling the parties to appraisal was improper.").

appraisal if a valuation dispute still exists.  *See id.*; *Villagio*, 2021 WL 1432160, at *2-3 (compelling appraisal despite the insurer's assertion that "it wholly denied the [insured's] claim based on intentional misrepresentation of the amount of loss that constituted fraud which voids coverage under the policy"); *Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 3852731, at *2 (M.D. Fla. Aug. 16, 2019) (holding that the "[f]ailure to claim actual-cash-value or replacement-cost damages 'may be defenses to the amount of damages that [the insured] may obtain, but [they] are not bases for denying appraisal'") (second and third alterations in original) (quoting *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *4 (M.D. Fla. May 29, 2019)); *Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 4861196, at *1 (M.D. Fla. Oct. 2, 2019) ("[The insurer's] consideration of a fraud defense is no reason to stop or stay appraisal."); *Marbella at Spanish Wells 1 v Zurich Am. Ins. Co.*, No. 2:21-cv-00641-SPC-MRM, 2022 WL 2135339, at *6 (M.D. Fla. Apr. 6, 2022) (finding that even if a supplemental claim were "wholly denied" by the insurer based on a statute of limitations affirmative defense, appraisal would still be appropriate), *report and recommendation adopted*, Doc. 48 at 6 (M.D. Fla. May 2, 2022).

Accordingly, the Undersigned considers the parties' papers to attempt to determine (1) whether a valuation dispute exists such that appraisal can be compelled and (2) whether Defendant's bases for denying Plaintiff's claim preclude appraisal.

### 1.   Whether a Valuation Dispute Exists.

Plaintiff contends that a valuation dispute exists because Defendant acknowledged that Plaintiff's property sustained a loss from a covered cause as evinced by (1) Defendant's consultants' reports of hurricane related damage, (Doc. 34 at 2), and (2) Defendant's Answer, which states that "[Defendant] admits that on or about September 10, 2017, certain parts of [Plaintiff's] Property sustained minimal damage from Hurricane Irma," (Doc. 38 at 1 (citing Doc. 9 at 2 ¶ 6)).  In response, Defendant argues that no valuation dispute can exist because it denied Plaintiff's entire claim.  (Doc. 35 at 2-3).  Additionally, Defendant implies that the enclosure of its consultants' reports in the June 24, 2021 coverage letter should not be read as a concession of coverage.  (Doc. 35 at 5 (citation omitted)).  Defendant does not, however, respond to Plaintiff's argument that Defendant acknowledged loss from a covered cause in Defendant's Answer.  (*See* Doc. 9 at 2 ¶ 6).

In considering whether a valuation dispute exists, the Undersigned finds it highly relevant that Defendant's own consultants, Grecco Construction Consultants, ("Grecco"), and Wiss Janney Elstner Associates, Inc., ("WJE"), reported hurricane-related damage upon inspecting Plaintiff's property.  (Doc. 34-3 at 1-2 ("Based upon WJE's findings of hurricane-related damage, Grecco prepared a repair estimate for each of the buildings listed under the Policy.  For Building A, Grecco's estimate totaled $25,358.56.  For Building B, Grecco's estimate totaled $30,215.34.")).  Moreover, in providing its preliminary repair estimates, Grecco specifically noted that it had been "asked to provide detailed repair and/or replacement pricing for

building damages sustained at the subject property *resulting from [a] hurricane*." (Doc. 34-4 at 3 (emphasis added); *see also* Docs. 34-4 at 1-3, 17-19; 34-5). Further, Defendant's June 24, 2021 coverage letter expressly acknowledges that Defendant's consultants reported storm-related and hurricane-related damage. (*See* Doc. 34-3 at 1-2).

While these consultant reports may not concede coverage, they make clear that a portion of Plaintiff's property sustained at least a minimal loss from a covered cause. Indeed, Defendant never expressly contradicts or disavows its consultants' findings that Plaintiff's property sustained storm-related and hurricane-related damage. (*See* Doc. 35). To the contrary, Defendant "admits that on or about September 10, 2017, certain parts of [Plaintiff's] Property sustained minimal damage from Hurricane Irma." (Doc. 9 at 2 ¶ 6).

Notwithstanding Defendant's failure to directly address whether Plaintiff's property sustained damage from a covered cause, the Undersigned finds that Defendant has acknowledged that Plaintiff's property sustained a loss from a covered cause because Defendant's Answer admits that Plaintiff's property was damaged by Hurricane Irma and Defendant's coverage letter includes estimations from its own consultants as to the amount of that covered damage. *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("[F]actual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them."). It follows then that a valuation dispute exists between the parties as to the amount of damage caused by a covered cause because while Plaintiff

estimated its loss to be roughly $990,539.16, (Doc. 34-1 at 2), Defendant's

consultants estimated the loss based on hurricane-related damage to be only

$55,573.90, (Doc. 34-3 at 2).

In light of the determination that a valuation dispute exists, the Undersigned

next addresses whether Defendant's denial of coverage precludes appraisal.

### 2.    Defendant's Basis for Denying Plaintiff's Claim.

Defendant's response to Plaintiff's motion cites Defendant's June 24, 2021

coverage letter to establish Defendant's bases for denying Plaintiff's claim.  (Doc. 35

at 2-3, 5 (citing Doc. 34-3 at 1-7)).  Defendant's June 24, 2021 coverage letter states:

> [Defendant] has determined that there is no coverage
> available for the reported loss and/or damage.  The basis
> for [Defendant's] coverage determination are explained in
> detail below. . . .   Importantly, the Policy's limits of
> insurance are subject to a 3% hurricane deductible . . . .
> Based upon WJE's findings of hurricane-related damage,
> Grecco prepared a repair estimate for each of the buildings
> listed under the Policy.  For Building A, Grecco's estimate
> totaled $25,358.56.   For Building B, Grecco's estimate
> totaled $30,215.34.

(Doc. 34-3 at 1-2).  The June 24, 2021 coverage letter continues by revealing the

specific bases on which Defendant denied Plaintiff's claim:

> [(1)] there is no coverage available under the Policy for any
> loss or damage caused by or resulting from wear and tear,
> corrosion, deterioration, or inadequate maintenance . . . ,
> [(2)] it appears that [Plaintiff] neglected to use all reasonable
> means to save and preserve property from further damage
> at or after the hurricane . . . , [(3)] neither WJE nor Grecco
> observed evidence of any openings to the roofs or walls at
> the Insured Premises caused by Hurricane Irma that would
> have allowed rain water to enter.  Furthermore, [Plaintiff]
> did not present any evidence of openings caused by

> Hurricane Irma or any other Covered Cause of Loss . . . ,
> [(4)] [t]he conduct of [Plaintiff] or its representatives
> materially and substantially prejudiced [Defendant's]
> ability to fully and efficiently investigate this claim . . . , [(5)]
> we have determined that [Plaintiff] implicated [the
> Concealment, Misrepresentation, or Fraud] condition by
> making fraudulent representations relating to the claim
> and/or intentionally concealing or misrepresenting
> material facts concerning the Policy's coverage part, the
> covered property and/or the claim . . . , [and (6) Plaintiff]
> neither completed nor commenced repairs of the claimed
> damage by September 10, 2019. . . .
>
> In sum, for the reasons set forth above, [Defendant]
> respectfully disclaims coverage for this claim in its entirety.

(*Id.* at 3-7).

Relevantly, Defendant's first asserted basis for denying Plaintiff's claim alleges that "there is no coverage under the Policy for any loss . . . resulting from wear and tear[ or other uncovered causes of loss]." (*Id.* at 3). While Defendant asserts that it is disclaiming coverage for Plaintiff's claim on this basis, it does not expressly state that it is denying coverage for Plaintiff's *entire* claim on this basis. (*Id.*). Indeed, taking the position that all of Plaintiff's alleged damage was caused by excluded causes would be directly contradicted by (1) Defendant's consultants' reports of hurricane-related damage and (2) Defendant's Answer stating that Plaintiff's property sustained damage from Hurricane Irma, a covered cause. (Docs. 34-3 at 2; 9 at 2 ¶ 6). Similarly telling, Defendant's June 24, 2021 coverage letter highlights that "the Policy's limits of insurance are subject to a 3% hurricane deductible." (Doc. 34-3 at 1). Importantly, even if the alleged value of damage from a covered cause falls below a policy's deductible, appraisal is not precluded. *ABC Univ. Shops,*

*LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV, 2018 WL 6271839, at *9 (S.D. Fla. Oct. 18, 2018) (finding appraisal appropriate when the insurer admitted $1,266.68 worth of covered damage, which fell below the $180,00.00 deductible), *report and recommendation adopted*, 2018 WL 6267943 (S.D. Fla. Nov. 30, 2018).

Absent any express statement to the contrary and given Defendant's admission that Plaintiff's property was damaged by a covered cause, the Undersigned finds that Defendant did not deny Plaintiff's *entire* claim on the basis that Plaintiff's alleged losses were all caused by an uncovered cause. As a result, to the extent that Defendant argues that *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002) and *Sandpiper Greens Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 2:20-cv-00578-JLB-MRM, 2020 WL 7768947 (M.D. Fla. Dec. 30, 2020) preclude appraisal here, the Undersigned is not persuaded.

Rather, in *Johnson*, the Florida Supreme Court held that "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." 828 So. 2d at 1022. Here, where Defendant's Answer and consultants' reports both acknowledge that Plaintiff's property sustained a loss due to a covered cause, Defendant cannot rely on *Johnson* to attempt to preclude appraisal.

Similarly, the Court's analysis in *Sandpiper* does not apply as the instant matter is factually distinct. 2020 WL 7768947, at *2-3. In *Sandpiper*, the Court found the insured's demand for appraisal premature "because it [was] clear from the

13

attachments to the Amended Complaint that [the insurer had] not acknowledged any coverage." *Id.* at *3. While this appears to be identical to the instant case on its face, a closer inspection of "the attachments to the Amended Complaint" reveal an important distinction: the insurer in *Sandpiper* sent the insured a coverage letter expressly denying coverage on the basis that the insurer's "inspections did not reveal any evidence of damage caused by [H]urricane Irma." *Sandpiper Greens Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 2:20-cv-00578-JLB-MRM, Doc. 3-3 at 1 (M.D. Fla. Aug. 10, 2020). The *Sandpiper* Court relied on this statement in finding appraisal premature as evinced by its conclusion that "[t]he only issue presented at this time is a coverage issue." Here, in contrast, Defendant *has* acknowledged that Plaintiff's property sustained damage as a result of Hurricane Irma and a valuation dispute exists. Thus, the Court's reasoning in *Sandpiper* does not apply because Defendant's denial of coverage accompanies an acknowledgment that Plaintiff's property sustained loss due to Hurricane Irma.

Having found that Defendant's first asserted basis for denying coverage does not preclude appraisal, the Undersigned now turns to Defendant's remaining bases for denying coverage. Specifically, Defendant asserts that it disclaimed coverage for Plaintiff's claim because (1) Plaintiff failed to prevent its property from sustaining further damage, (2) Plaintiff failed to present evidence that certain portions of its property were damaged by a covered cause, (3) Plaintiff's conduct prejudiced Defendant's ability to investigate the claim, (4) Plaintiff voided the policy by fraudulently misrepresenting or concealing facts, and (5) Plaintiff failed to commence

the repairs necessary to obtain replacement cost value coverage under the Policy.
(*See* Doc. 34-3 at 4-7).

 Upon review of the relevant legal standards, the Undersigned finds that none
of these bases to deny coverage preclude appraisal.  Indeed, as discussed above, the
Court has "discretion over the relative timing of appraisal and coverage
determinations."  *Castillo*, 2021 WL 4438370, at *5-6 (citation omitted); *Villagio*,
2021 WL 1432160, at *2-3 (compelling appraisal despite the insurer's assertion that it
"wholly denied" the insured's claim based on a fraudulent misrepresentation that
voided the policy); *Waterford*, 2019 WL 3852731, at *2 (compelling appraisal despite
the insurer's assertion that the insured could not claim actual-cash-value or
replacement-cost damages); *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *4
(same); *Waterford*, 2019 WL 4861196, at *1 (M.D. Fla. Oct. 2, 2019) (compelling
appraisal despite the insurer's argument that it would assert a fraud defense);
*Marbella*, 2022 WL 2135339, at *6 (finding that even if a supplemental claim were
"wholly denied" by the insurer based on a statute of limitations affirmative defense,
appraisal would still be appropriate), *report and recommendation adopted*, Doc. 48 at 6
(M.D. Fla. May 2, 2022).

 In sum, the Undersigned finds that a valuation dispute exists between the
parties such that appraisal can be compelled and Defendant's bases for denying
Plaintiff's claim do not preclude the Court from requiring the parties to engage in an
appraisal of that valuation dispute.  Put simply, the coverage issues raised by
Defendant may be determined by the Court after appraisal as to the amount of

damage sustained by covered causes.  *See Castillo*, 2021 WL 4438370, at *5-6 (citations omitted).  Indeed, appraisal as to the amount of damage caused by Hurricane Irma may narrow the remaining coverage issues before the Court, all of which can be resolved following appraisal.

Thus, the Undersigned recommends that the Court compel Defendant to engage in an appraisal as "[c]ompelling appraisal not only upholds the terms of the policy but conserves the parties' and this Court's resources should appraisal resolve the scope of loss issue between the parties without further litigation."  *Castillo*, 2021 WL 4438370, at *6 (quotation omitted); *see also State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. 3d DCA 1995) (noting "the general, even overwhelming, preference in Florida for the resolution of conflicts through any extra-judicial means, especially arbitration, for which the parties have themselves contracted").

## B. Whether the Underlying Proceedings Should Be Stayed Pending Completion of the Appraisal.

Plaintiff asserts that this matter should be stayed pending the completion of the appraisal in the interests of judicial economy.  (Doc. 34 at 19-20).  Defendant argues that a stay is inappropriate as a majority of its defenses revolve around coverage issues and preventing it from engaging in discovery "to procure the deposition testimony of former board members, some of whom are elderly," will prejudice its ability to investigate Plaintiff's alleged fraud.  (Doc. 35 at 8-9).

16

Upon a review of the allegations underlying this dispute, the Undersigned finds that a stay of these proceedings is appropriate as the completion of the appraisal may resolve a majority, if not all, of the parties' dispute.  Additionally, the Undersigned is not persuaded by Defendant's perfunctory assertion that time-sensitive discovery relating to its fraud defense is necessary or that permitting the parties to continue to engage in discovery will lead to a more efficient resolution of the parties' underlying dispute.  *See Waterford*, 2019 WL 3852731, at *3 ("[A] stay would preserve judicial resources because appraisal might resolve the parties' dispute.").  Thus, the Undersigned recommends that the Court stay these proceedings pending the completion of appraisal.

### C.    Whether the Court Should Require the Appraisal Panel to Issue Its Award in a Specific Form.

Defendant argues that the appraisal panel should be required to issue a line-item appraisal award that coincides with the terms of the policy by providing different figures "for RCV, ACV, ordinance or law as well as debris removal."  (Doc. 35 at 9-10 (citing *Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-31-JLB-NPM, 2021 WL 1214888, at *4 (M.D. Fla. Mar. 31, 2021))).  Plaintiff objects to Defendant's requests by asserting that the Court should order appraisal to proceed according to the plain terms of the Policy to which the parties agreed.  (*See* Doc. 34 at 19).

17

"Courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (citation omitted).

Crucially, Defendant does not cite the Policy's language in requesting that the Court impose appraisal guidelines and require specific processes and award forms. (*See* Doc. 435). In fact, the Policy's appraisal provision states only that:

> In th[e] event [of an appraisal], each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Doc. 34-2 at 70). The above language does not require that the Court (1) impose specific guidelines on the appraisal panel, (2) mandate a specific appraisal process, or (3) compel a specific form for the appraisal award. (*See id.*).

The Undersigned finds that the Court should not impose guidelines or require specific processes during appraisal as that would amount to rewriting the parties' Policy to add conditions for the appraisal process that were not part of the parties' bargain. *See Coral Reef Metro, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-460-FtM-38CM, 2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted*, 2019 WL 700114 (M.D. Fla. Feb. 20, 2019) ("[T]he Court recommends enforcing the appraisal provision as it is written rather than fashioning requirements to which the parties did not agree."); *Waterford*, 2019 WL 3852731, at *3 ("[W]hile the Court

agrees . . . that a line-item breakdown might help decide coverage disputes, it will not rewrite the policy to require one.").

Thus, based on Plaintiff's opposition to Defendant's request, the Undersigned finds that the Court should not rewrite the parties' Policy to require the appraisal panel to issue the appraisal award in a specific form. *See Waterford*, 2019 WL 3852731, at *3; *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *4; *Coral Reef Metro*, 2019 WL 721286, at *3; *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136-JLB-MRM, 2022 WL 962743, at *9 (M.D. Fla. Jan. 31, 2022), *report and recommendation adopted*, No. 2:20-cv-136-JLB-MRM, 2022 WL 780950 (M.D. Fla. Mar. 15, 2022).

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. Plaintiff's Motion to Stay and Compel Appraisal (Doc. 34) be **GRANTED**;

2. This action be **STAYED** pending completion of the appraisal process and the Clerk of Court be directed to add a stay flag to this case;

3. The parties be directed to jointly notify the Court of the names of (a) each party's selected appraiser and (b) the umpire, by a date certain;

4. The parties be directed to file a joint report on the status of appraisal every ninety days; and

5.    The parties be directed to file a joint notice stating (a) what issues, if any, remain for the Court to resolve, (b) whether the stay needs to be lifted, and (c) how this action should proceed, no later than fourteen days after the conclusion of the appraisal.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on July 12, 2022.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection. The parties are warned that the Court will not extend these deadlines. To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

20

Copies furnished to:

Counsel of Record
Unrepresented Parties